J-A11037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES HOWARD WIBLE | : | |
| | : | |
| Appellant | : | No. 916 MDA 2019 |

Appeal from the Judgment of Sentence Entered May 6, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s):  CP-36-CR-0003413-2018

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED MAY 19, 2020**

Appellant James Howard Wible appeals from the Judgment of Sentence imposed in the Court of Common Pleas of Lancaster County on May 6, 2019, following the revocation of his parole.  We affirm.

The trial court set forth the relevant facts and procedural history herein as follows:

> On April 13, 2017, Detective Jevon Miller of the Lititz Borough Police Department charged Appellant with one count of invasion of privacy [1] for taking over 30 photographs of a minor female inside her residence between August 2015 and October 2016.[2] The victim did not give consent for Appellant to take these photographs, and she was unaware that he had taken the photographs on his electronic tablet. Several of the photographs contained images of the minor victim's intimate body parts, including her genital area as she sat on a sofa. Specifically, Appellant "zoomed" the camera at her genital area and depicted the minor female in her underwear. Ultimately, this charge was docketed to Information No. 2776-2017.

_____

[*] Former Justice specially assigned to the Superior Court.

On June 29, 2017, upon request from the Lancaster County District Attorney's Office, the Lititz Borough Police Department provided the District Attorney's Office and Appellant's defense attorney with all documents pertaining to the invasion of privacy investigation as required for discovery and inspection. On May 10, 2018, Randall Scott Kreiser told Detective Sergeant John Schofield of the Lititz Borough Police Department that Appellant emailed the entire contents of the discovery documents to him, which included photographs of the minor victim's intimate parts. On May 11, 2018, Detective Miller spoke with Raymond Wible, Appellant's cousin. Wible told Detective Miller that Appellant showed him, in person, the entire contents of the discovery documents, including the photographs of the minor victim's intimate parts.

Based upon these facts, Appellant was arrested on May 12, 2018, and charged with knowingly disseminating obscene/sexual materials[3] to at least two adult persons. Appellant was unable to post bail, and was remanded to the Lancaster County Prison. On May 15, 2018, Appellant, an elected Pennsylvania State Constable, was suspended from performing any constable-related services for the Magisterial District Courts in Lancaster County.[4] These new charges were docketed to Information No. 3413-2018.

On August 16, 2018, Appellant appeared before the Honorable Merrill M. Spahn and entered a negotiated plea to the charge of knowingly disseminating obscene/sexual materials.[5] Pursuant to the plea agreement, Appellant received a split sentence of time-served to 23 months' incarceration, followed by a 3-year probationary period.[6] Appellant was also ordered to pay a fine of $100.00, and costs of prosecution. It was further ordered that Appellant was to complete a psychological/psychiatric (mental health) evaluation/assessment and follow the recommended treatment, as well as a pre-release sex offender evaluation. Appellant did not file a direct appeal from his judgment of sentence. Appellant was represented through his guilty plea by the Office of the Public Defender for Lancaster County, specifically, Daniel E. Kaye, Esquire.

Parole was granted on August 16, 2018. A *capias* was filed on April 16, 2019, by Adult Probation & Parole Services charging Appellant with violation of a condition of his supervision, namely, his unsuccessful discharge on March 26, 2019, from sex offender treatment that was deemed necessary as per his court-ordered sex offender evaluation.

At the ensuing probation and parole violation hearing before the undersigned on May 6, 2019, counsel[7] stipulated to the facts regarding the violation. N.T. at 3. Therefore, this Court found

Appellant to be in violation of his probation and parole. *Id*. at 13, and sentenced him to the balance of the maximum sentence of 23 months' incarceration. *Id*. at 15. Appellant's consecutive probationary sentence remained. *Id*. Appellant was immediately paroled without petition, and ordered to complete sex offender treatment. *Id*.

On June 4, 2019, Appellant filed a timely notice of appeal to the Superior Court from the judgment of sentence imposed on May 6, 2019. Pursuant to this Court's directive, on July 5, 2019, Appellant filed a concise statement of matters complained of on appeal[.]

---

[1] 18 Pa.C.S.A. § 7507(a)(2).

[2] Appellant was the paramour of the victim's mother and was living with them at the time.

[3] 18 Pa.C.S.A. § 5903(a)(2).[1]

[4] A Pennsylvania State Constable is an elected office held in all Pennsylvania townships, boroughs, and cities except Philadelphia. Pennsylvania Constables are sworn law enforcement officers who serve six-year terms and have the authority in Pennsylvania to serve subpoenas, civil process and arrest warrants anywhere within the Commonwealth, and to conduct warrantless arrests for felonies and breaches of the peace committed in their presence. ***See* Commonwealth v. Allen,** 206 A.3d 1123 (Pa. Super. 2019).

[5] The invasion of privacy charge at Information No. 2776-2017 was *nolle prossed* as part of the plea agreement. Notes of Testimony, Probation and Parole Violation Hearing (N.T.) at 5-6.

[6] As a misdemeanor 1, this charge carried a statutory maximum term of incarceration of five years, plus a fine of $10,000.00.

[7] Privately-retained counsel, Anthony K. diDonato, Esquire, appeared on Appellant's behalf at the Violation Hearing.

---

[1] 18 Pa.C.S.A. 5903(a)(2) provides, in relevant part that: "No person, knowing the obscene character of the materials ... involved, shall ... sell, lend, distribute, transmit, exhibit, give away or show any obscene materials to any person 18 years of age or older ...." 18 Pa.C.S.A. § 5903(a)(2).

Appellant admitted herein when entering his plea that, knowing the obscene/sexual nature of the photographs of the victim, he electronically mailed the same to one adult male and personally showed them to another adult male. Appellant knew the victim depicted in the photos, his girlfriend's daughter, was a minor and that the photographs of her genital area were, in fact, obscene.

Trial Court Opinion, filed 8/22/19, at l-5.

In his appellate brief, Appellant presents the following three issues for our review which mirror those he raised in his Pa.R.A.P. 1925(b) Statement:

1. Whether the Court abused its discretion in considering the results of a therapeutic polygraph exam wherein questions were posed regarding facts surrounding charges that had been nolle prossed by the Commonwealth.

2. Whether the Court abused its discretion in considering the erroneous Statement of Law made by the Commonwealth that 18 Pa.C.S. § 7507.1, et seq. does not include "sexual gratification" as an element of the offense.

3. Whether the Court abused its discretion in finding Appellant in violation of his probation based solely on the results of a therapeutic polygraph exam.

Appellant's Brief at 4.[2] In considering these related claims, we are mindful of the following:

> Unlike a probation revocation, a parole revocation does not involve the imposition of a new sentence. **Commonwealth v. Mitchell**, 632 A.2d 934, 936 (Pa.Super. 1993). Indeed, there is no authority for a parole-revocation court to impose a new penalty. **Id.** Rather, the only option for a court that decides to

_____

[2] In his appellate brief, Appellant includes a subpart C argument pertaining to his first issue wherein he asserts that the basis for his parole revocation was in violation of his Fifth Amendment Rights under the United States Constitution. **See** Appellant's Brief at 16-20. However, Appellant did not present this theory of relief in his concise statement of matters complained of on appeal; therefore, he has waived this constitutional argument. **See** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); **Commonwealth v. Wanner**, 158 A.3d 714, 717 (Pa. Super. 2017) (noting that an appellant may not raise "a new and different theory of relief" for the first time on appeal (quoting **Commonwealth v. York**, 465 A.2d 1028, 1032 (Pa.Super. 1983)).

revoke parole is to recommit the defendant to serve the already-imposed, original sentence. ***Id****.* At some point thereafter, the defendant may again be paroled. ***Id****.*

Therefore, the purposes of a court's parole-revocation hearing—the revocation court's tasks—are to determine whether the parolee violated parole and, if so, whether parole remains a viable means of rehabilitating the defendant and deterring future antisocial conduct, or whether revocation, and thus recommitment, are in order. ***Mitchell****,* 632 A.2d at 936, 937.

The Commonwealth must prove the violation by a preponderance of the evidence and, once it does so, the decision to revoke parole is a matter for the court's discretion. ***Id****.* at 937. In the exercise of that discretion, a conviction for a new crime is a legally sufficient basis to revoke parole. ***Commonwealth v. Galletta****,* 864 A.2d 532, 539 (Pa.Super. 2004).

Following parole revocation and recommitment, the proper issue on appeal is whether the revocation court erred, as a matter of law, in deciding to revoke parole and, therefore, to recommit the defendant to confinement. ***Mitchell****,* 632 A.2d at 936. Accordingly, an appeal of a parole revocation is not an appeal of the discretionary aspects of sentence. ***Id****.*

***Commonwealth v. Kalichak***, 943 A.2d 285, 290–91 (Pa.Super. 2008) (footnote omitted).

The first and third issues Appellant raises herein pertain to the results of a therapeutic polygraph examination which had been recommended and to which he agreed as part of his sex offender treatment. N.T. Violation Hearing, 5/6/19, at 3, 9-10. Appellant argues that certain questions were irrelevant because he had plead guilty to disseminating obscene/sexual photographs, not to taking them. ***Id***. at 11; Appellant's Brief at 11-16. Appellant further posits that the trial court relied only upon his failure of the examination in revoking his parole. ***Id***. at 25-28.

At the Violation Hearing, Appellant's probation officer, Ms. Cruz,[3] testified that at the time of his sentencing, Appellant was ordered to undergo a sex offender evaluation the result of which required him to attend sex offender treatment. *Id*. at 3. Although he reported to all scheduled appointments with Ms. Cruz, Appellant continually refused to accept responsibility for his criminal conduct and, instead, would minimize the severity of his actions and blame others therefor. *Id*.

Mr. David Beck, a therapist with TRIAD Treatment Specialists, testified that in an effort to encourage Appellant to seek proper treatment, which would require him to admit to the sexual nature of his actions that led to the crime to which he pled guilty, a therapeutic polygraph examination was recommended. *Id*. at 10. Appellant agreed to the take the polygraph and during the examination administered on October 31, 2018, a total of ten questions were posed. *Id*.

Appellant's responses to the following three questions related to the instant appeal were deemed to be false: (1) "Did you take even one of those pictures of [the minor victim's] crotch"; (2) "Are you lying when you said you did not take one of those pictures of [the minor victim's] crotch"; and (3) "[D]id you even take one of those zoomed-in images of [the minor victim's] crotch." *Id*. Mr. Beck stressed that "[n]ot one of those questions involved

_____

[3] Ms. Cruz's first name does not appear in the transcript.

sexual gratification." **Id**. As a result of the determination that he had been deceptive on the examination and in light of his failure to progress in his therapy, Appellant was discharged from sex offender treatment. **Id**. at 4, 11.

Upon our review of the record, we discern no error in the trial court's finding that the examination results as interpreted by the personnel responsible for Appellant's treatment revealed Appellant's continued deceptive behavior and evinced his refusal to benefit from rehabilitation. This resulted in Appellant's inability to remain in sex offender treatment, a necessary aspect of his sentence. As the trial court explained:

> Appellant was discharged from the sex offender treatment program as a result of his deceptive answers to the therapeutic polygraph exam. His probation was revoked based, in part, upon his dishonesty. Answering the exam questions truthfully would not have resulted in the disclosure of uncharged criminal behavior... . Here, because there was an actual representation by the Commonwealth that Appellant's guilty plea agreement included an agreement by the Commonwealth to *nolle pros* the charge in the first complaint as a condition of the guilty plea in the second, double jeopardy does attach. Thus, Appellant could not have been recharged with the offense of invasion of privacy based upon his truthful answers to the questions posed in the polygraph exam.
>
> ***
>
> Appellant's initial probation requirements mandated him to obtain a sex offender evaluation and to comply with all treatment recommendations flowing from that evaluation. Sex offender treatment was advised in this case, and Appellant was referred to Triad Treatment Specialists, which required him to be honest with his therapists and to take a therapeutic polygraph exam to assist in his treatment. Appellant was discharged from Triad after he failed the polygraph exam that asked him about photographing the genitalia of a child. Although Appellant contends that he answered the three questions on that exam truthfully, the personnel responsible for Appellant's treatment concluded

otherwise and discharged Appellant for his failure to progress in treatment, *i.e.,* for his inability to provide honest answers regarding his criminal conduct. This Court found that treatment discharge to be proper and valid. Because Appellant violated this critical term of his probation, and because the likelihood of Appellant being rehabilitated was low due to his continued efforts to justify his actions, minimize the crime, and blame others, Appellant's probation was revoked as it was proving to be an ineffective rehabilitation tool. The record demonstrates that the failed polygraph exam was not the reason the Commonwealth sought revocation or why Appellant was found in violation of probation. Rather, Appellant was found in violation because he did not remain in sex offender treatment and did not benefit from attempts at rehabilitation.

Trial Court Opinion, filed 8/22/19, at 7-8, 9-10 (citations omitted).

In light of the foregoing, we find no abuse of discretion on the part of the trial court in relying on Mr. Beck's testimony when finding Appellant to be in violation of and in revoking his parole. **See Commonwealth v. Shrawde**r, 940 A.2d 436 (holding where a probationer lies during a polygraph and/or the examination shows him to have been dishonest with his therapists which causes his discharge from a treatment program required as a condition of his probation, sufficient evidence exists to revoke his probation).

Appellant's second claim pertains to the Commonwealth's alleged erroneous misstatement of the law as to the elements of 18 Pa.C.S.A. § 7507.1. In analyzing this claim and determining it lacked merit, the trial court reasoned as follows:

Frankly, this Court is unable to see the relevance of this issue to the facts of this case. As noted above, the three questions posed to Appellant during his therapeutic polygraph exam related solely to the taking of the photographs of the minor victim's genitalia. There were no questions posed to Appellant as to the purpose for

- 8 -

taking the photographs, *i.e.,* for Appellant's sexual gratification. Moreover, whether the Commonwealth correctly identified sexual gratification as an element of the "invasion of privacy" offense, which was ultimately *nolle prossed,* had no bearing on this Court's determination of whether Appellant violated his probation.

Trial Court Opinion, filed 8/22/19 at 10.

Following our review, we again find no abuse of discretion and agree that this argument is irrelevant, especially in light of the Appellant's admission at the outset of the Violation Hearing that his "violation did, in fact, occur." N.T. Violation Hearing, 5/6/19, at 4.   As such, this final issue lacks merit.

Judgment of Sentence Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/19/2020

- 9 -